IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ALFRED VINCENT AMBRIZ,

        Plaintiff,                        No. CIV S-05-1298 DFL EFB P

    vs.

SCOTT KERNAN, et al.,

        Defendants.                 FINDINGS AND RECOMMENDATIONS

_____/

        Plaintiff is a prisoner, without counsel, seeking relief for alleged civil rights violations. *See* 42 U.S.C. § 1983. This action proceeds on the January 5, 2006, second amended complaint in which plaintiff alleges that defendants Scott Kernan, Facility Captain Hill, Lieutenant Holmes, Sergeant Kennedy and Sergeant Ibarra: (1) denied plaintiff the right to exercise his religion 1999 through 2005; (2) held him in the segregated housing unit from 1999 through 2005 as a form of racial harassment in violation of the Equal Protection Clause of the Fourteenth Amendment; and, (3) intentionally discriminated against him in assignment of prison jobs, permitting use of recreational equipment and access to programs, and in discipline from 1999 through 2005. Defendants move to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") on the ground that plaintiff failed to exhaust available administrative remedies. *See* 42 U.S.C. 1997e(a). As explained below, defendants have not demonstrated that

plaintiff failed to exhaust available administrative remedies as required by 42 U.S.C. § 1997e. Rather, plaintiff's appeal of his grievance designated Sac. C-04-0437 satisfied the exhaustion requirement. Accordingly, defendant's motion must be denied.

**I. Standards Applicable to This Motion**

The instant motion was filed under Rule 12(b)(6), Fed. R. Civ. P. As discussed below, the Ninth Circuit has questioned in *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003), whether Rule 12(b)(6) or Rule 56 is the appropriate procedural motion for challenging a prisoner's failure to exhaust available administrative remedies pursuant to 42 U.S.C. § 1997e. It concluded that neither rule fits procedurally and that such a motion should be bought as "an unenumerated Rule 12(b) motion." *Wyatt*, 315 F.3d at 1119. However, the court concluded that each rule provides an analogous framework depending on whether evidence has been submitted with the motion.

As a threshold matter, Rule 12(b)(6) tests the sufficiency of *allegations* in the complaint to state a cognizable claim, *Albright v. Oliver*, 510 U.S. 266 (1994), whereas Rule 56 tests the sufficiency of *evidence* to support those allegations. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Whether a motion under either rule seeks adjudication on the merits (because the plaintiff cannot allege or establish an element of the cause of action), or whether the motion seeks judgment or dismissal because of a technical defense that precludes plaintiff's claim, the procedural distinction between Rules 12 and 56 is whether the motion challenges the adequacy of allegations or the sufficiency of evidence to prove allegations.[1] For this reason, courts will

---

[1] Summary judgment procedures under Rule 56 test whether a dispute over a given fact is genuine, and, if so, whether the dispute over that fact makes any difference to the outcome of the case. *Celotex,* 477 U.S. at 323. This is true whether a failure of proof is over an element to the claim or an inability to overcome an affirmative defense once the defendant has presented evidence establishing that defense. "There can be no genuine issue as to any material fact where there is a complete failure of proof as to an essential element of the nonmoving party's case because all other facts are thereby rendered immaterial." *Id.* Thus, of particular relevance here, if a claim is barred due to a failure to exhaust administrative remedies, all other facts are rendered immaterial and the court must dismiss. The dismissal, however, follows the application of the procedural mechanics of Rule 56 to determine whether the opposing party's evidence is adequate to establish a genuine factual dispute. Where those procedures result in the conclusion that the plaintiff cannot prove his factual allegations refuting the evidence of failure to exhaust,

not normally look beyond the four corners of the complaint in resolving a Rule 12(b)(6) motion. Indeed, when a party submits matters extrinsic to the complaint on such a motion, Rule 12(b)(6) expressly mandates that the court either disregard the extrinsic material or invoke the procedural protections afforded under Rule 56 so that the non-moving party is provided the opportunity to present evidence sufficient to overcome the motion.[2] *Rosales v. United States*, 824 F.2d 799, 802 (9th Cir 1987) (If matters external to the pleadings are presented to the court and not excluded, a Rule 12(b)(6) motion for failure to state a claim must be treated as a motion for summary judgment.).

Here, the motion to dismiss challenges whether plaintiff has met the requirement of the Prison Litigation Reform Act (PLRA) that "[n]o action shall be brought" until available administrative remedies are exhausted. 42 U.S.C. § 1997e(a). The Ninth Circuit has held that the PLRA's exhaustion requirement is not jurisdictional. *Wyatt v. Terhune*, 315 F.3d 1108, 1117, n.9 (9th Cir. 2003). Moreover, "nonexhaustion under § 1997e(a) of the PLRA does not impose a pleading requirement." *Id.* at 1119. Rather, the Ninth Circuit held "that § 1997e(a) creates a defense–defendants have the burden of raising and proving the absence of exhaustion." *Id.* Given the conclusion that exhaustion for purposes of the PLRA is neither a pleading requirement nor a jurisdictional prerequisite, the quintessential grounds for motions under Rule 12(b), it would appear that the procedures under Rule 56 (not Rule 12) provide the appropriate tool for addressing a prisoner's failure to meet the requirement. It is, after all, the facts

---

the dispute is not genuine and the complaint must be dismissed. The principle is hardly novel. It applies whenever a material fact affects the outcome, whether it is on technical grounds such as exhaustion, the unexcused delay beyond an expiration of a statute of limitations, a lack of standing based on fact specific reasons, etc., or on the merits due to an inability to establish an element of the underlying claim.

[2] These procedures include converting the motion to dismiss to a Rule 56 motion and providing notice to the non-moving party that the facts challenged in the complaint must be supported with evidence adequate to demonstrate that there is a genuine issue of material fact which warrants resolution through live testimony, either at trial or, with some disputed jurisdictional facts, a pretrial evidentiary hearing to determine jurisdiction.

establishing exhaustion, not allegation of its completion in the complaint, that are being challenged. Indeed, the complaint need allege nothing about exhaustion. Instead, it is defendants' burden to present evidence proving the failure to exhaust. However, in light of *Wyatt*, under which procedural rule the issue should be raised is not clear.

*Wyatt* instructs that "the failure to exhaust nonjudicial remedies that are not jurisdictional should be treated as a matter in abatement,[3] which is subject to an unenumerated Rule12(b) motion rather than a motion for summary judgment." *Wyatt*, 315 F.3d at 1119. The *Wyatt* opinion observes that summary judgment is ordinarily judgment "on the merits." *Id.* However, as noted, the standards under Rule 56 are used when a Rule 12 motion seeks to establish facts by materials extrinsic to the complaint. Thus, *Wyatt* is clear that regardless of nomenclature, a motion attacking failure to exhaust is not a challenge to the sufficiency of the complaint. It is a motion in which defendant must raise and prove by evidence the absence of exhaustion. *Id.* In this regard, the Ninth Circuit in *Wyatt* provides further guidance. It recognizes that when the district court looks beyond the pleadings to a factual record in deciding the exhaustion motion, it necessarily does so under "a procedure closely analogous to summary judgment." *Id.*, n.14.

---

[3] A "matter in abatement" is "the suspension or defeat of an action for a reason unrelated to the merits of the claim." *Andrews v. King*, 398 F.3d 1113, 1118 (9th Cir. 2005). It has its roots in the common-law "plea in abatement," abolished by Fed. R. Civ. P. 7(c). Rule 7 of the Federal Rules of Civil Procedure "unceremoniously abolishes a great deal of ancient procedural dogma that has little place in a streamlined litigation system," Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*: Civil 3d § 1181, including pleas in abatement. *Black's Law Dictionary* 4 (6th ed. 1990). The "plea in abatement" is an archaic common law "plea which, without disputing merits of plaintiff's claim, objects to place, mode or time of asserting it. It allows plaintiff to renew suit in another place or form, or at another time, and does not assume to answer an action on its merits, or deny existence of a particular cause of action on which plaintiff relies." *Black's Law Dictionary* 1151 (6th ed. 1990). The Advisory Committee Notes to Rule 7(c) state that all statutes using the word "plea" are "modified in form by this rule." Thus, for example, the Revision Notes to 28 U.S.C.A. § 2105 (West 2006), which prohibits reversal of a District Court's ruling on non-jurisdictional "matters in abatement" in the Supreme Court and Circuit Courts of Appeals states, "Rule7(c) of the Federal Rules of Civil Procedure abolished all pleas, and the rules adopted the motion as a substitute therefor. The words 'matters in abatement' were, therefore substituted for the abolished 'plea in abatement' and 'plea to the jurisdiction.'" Modernly, a party makes a motion under Rule 12 or Rule 41, as appropriate, instead of making a plea in abatement. *See Black's Law Dictionary* 4, 1151-1152 (6th ed. 1990) ("abatement of action," and "plea in abatement).

Resort to the procedural safeguards of Rule 56 is for sound reason. Where the issue in dispute is one of fact (did, or did not, plaintiff perform the acts required to exhaust available remedies?) it is well established that regardless of whether a genuine factual dispute is over an element of a cause of action (i.e., an issue going to the merits of the claim), or over an affirmative defense such as a statute of limitations or exhaustion, the court may not weigh and resolve credibility on paper. *United States v. Two Tracts of Land in Cascade County, Mont.*, 5 F.3d 1360, 1362 (9th Cir. 1993) (determination that affidavit on summary judgment motion lacked credibility was improper prior to live testimony at trial); *Buffalo v. Sunn*, 854 F.2d 1158, 1166 (9th Cir. 1988) (conflicting affidavits over cause for meeting a deadline warrant live testimony). For this reason, courts utilize the procedures of Rule 56 to determine if there is a genuine dispute over an issue that is material to the outcome.[4] Likewise, the court must recognize the command in Rule 12(b) that where matters extrinsic to the complaint are submitted with a motion brought under that Rule, the motion must be converted to a motion for summary judgment. The panel's opinion in *Wyatt* expressly accounts for this, recognizing that "if the district court looks beyond the pleadings to a factual record in deciding the motion to dismiss for failure to exhaust--a procedure closely analogous to summary judgment--then the court must assure that [the non-moving party] has fair notice of his opportunity to develop a record."[5]

---

[4] A similar approach is utilized over challenges to jurisdictional facts. A district court may take evidence and make findings of fact necessary to rule on the subject matter jurisdiction question prior to trial if the jurisdictional facts are not intertwined with the merits. *Augustine* v. *United States*, 704 F.2d 1074, 1077 (9th Cir. 1983). "[I]f the jurisdictional issue and substantive claims are so intertwined that resolution of the jurisdictional question is dependent on factual issues going to the merits, the district court should employ the standard applicable to a motion for summary judgment and grant the motion to dismiss for lack of jurisdiction only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. Otherwise, the intertwined jurisdictional facts must be resolved at trial by the trier of fact." *Rosales* 824 F.2d at 803 (citing *Augustine,* 704 F.2d at 1077).

[5] In this regard, the difference between the relationship of Rules 12(b)(6) and 56, and that of an "unenumerated Rule12(b)" abatement motion and a procedure "closely analogous to summary judgment" is more theoretical than practical. Indeed, it is functionally the same. The district court must, of course, look beyond the pleadings to resolve the exhaustion question because *Wyatt* has specifically held that exhaustion under the PLRA is not a pleading

5

*Wyatt*, 315 F.3d at 1120, n.14.

Here, defendant's motion necessarily requires the court to consider the affidavits and exhibits presented for the purpose of proving the absence of exhaustion. Accordingly, the court will follow the analogous procedures of Rule 56 to address this motion and its supporting affidavit and exhibits. Those standards are well established.

## II. Rule 56 Standards

Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[6] As explained by the Ninth Circuit, the utility of Rule 56 to screen which cases actually require resolution of disputed facts over material issues (through presentation of testimony and evidence at trial) has been clarified and enhanced.

> In three recent cases, the Supreme Court, by clarifying what the non-moving party must do to withstand a motion for summary judgment, has increased the utility of summary judgment. First, the Court has made clear that if the non-moving party will bear the burden of proof at trial as to an element essential to its case, and that party fails to make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element, then summary judgment is appropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Second, to withstand a motion for summary judgment, the non-moving party must show that there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) (emphasis added). Finally, if the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). No longer can it be

---

requirement. In doing so, the district court must apply procedures closely analogous to those provided under Rule 56.

[6] On March 8, 2006, the court expressly informed plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409, 411-12 (9th Cir. 1988). Pursuant to *Wyatt*, 315 F.3d at 1120, n.4, that order also expressly informed plaintiff of the requirements for opposing a failure to exhaust motion that is supported by affidavits or declarations and exhibits.

>argued that *any disagreement* about a material issue of fact precludes the use of summary judgment.

*California Arch. Bldg. Prod. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir.), *cert. denied*, 484 U.S. 1006 (1988) (parallel citations omitted) (emphasis added).  In short, there is no "genuine issue as to material fact," if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Grimes v. City and Country of San Francisco*, 951 F.2d 236, 239 (9th Cir. 1991) (quoting *Celotex*, 477 U.S. at 322).

**III.  The Exhaustion Requirement**

A prisoner may bring no action under 42 U.S.C. § 1983 or any other federal law until he has exhausted available administrative remedies.  42 U.S.C. § 1997e(a).  This requirement is mandatory.  *Booth v. Churner*, 532 U.S. 731, 741 (2001).  A prisoner seeking leave to proceed *in forma pauperis* in an action challenging the conditions of his confinement brings an action for purposes of 42 U.S.C. § 1997e when he submits his complaint to the court.  *Vaden v. Summerhill*, 449 F.2d 1048, 1050 (9th Cir. 2006).  Therefore, a prisoner must exhaust available administrative remedies before filing any papers in federal court and the prisoner is not entitled to a stay of judicial proceedings in order to exhaust.  *Id.* at 1051; *McKinney v. Carey*, 311 F.3d 1198 (9th Cir. 2002).  Defendants have the burden of proving that plaintiff did not exhaust.  *Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005); *Wyatt*, 315 F.3d at 1119.

California prisoners may appeal "any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).  The regulations require the use of specific forms but contain no guidelines for grievance content.  Cal. Code Regs. tit 15, §§ 3084.2, 3085.  Prisoners ordinarily must present their allegations on one informal and three formal levels of review, although the informal and the first formal levels may be bypassed.  Cal. Code Regs. tit. 15, § 3084.5.  A division head reviews appeals on the first formal level, *see* Cal. Code Regs. tit. 15, § 3084.5(b)(3) (authorizing bypass

7

1  of the first formal level when the division head cannot resolve it), and the warden or a designee
2  thereof reviews appeals on the second formal level. *See* Cal. Code Regs., tit. 15 § 3084.5(e)(1).
3  Generally, completion of the third level, the Director's Level of Review, exhausts the remedy.
4  Cal. Code Regs. tit. 15, § 3084.1(a).

**IV. Facts as to Plaintiff's Alleged Failure to Exhaust**

Defendants submit evidence showing that plaintiff pursued an administrative appeal of adverse disciplinary decisions. They also submit evidence of the disciplinary hearings. The first hearing was on January 16, 2003, following which plaintiff was found guilty of disobeying a direct order and was reprimanded. Defendants' Exhibit A at 3. Plaintiff did not lose time credit and was not placed into administrative segregation.[7] *Id*.

The second disciplinary hearing resulted from a December 4, 2002, disciplinary report charging plaintiff with possession of an inmate-manufactured weapon, and plaintiff was placed into administrative segregation. Defendants' Exhibit A at 5, 11. On December 12, 2002, prison officials decided to hold plaintiff in administrative segregation until the disciplinary process was complete because they determined that plaintiff was a threat to the safety of others and a threat to the security of the institution. Defendants' Exhibit A at 11. At plaintiff's request, prison officials postponed hearing on the charge after referring the matter to the District Attorney's Office for possible criminal prosecution. Defendants' Exhibit A at 6- 9. On March 2, 2004, plaintiff signed a form purporting to revoke this request, but it had no effect because the District Attorney already had decided to prosecute him. Defendants' Exhibit A at 10, 17. On February 24, 2004, plaintiff was convicted of possession of a weapon and sentenced to five years in prison. Defendants' Exhibit A at 6-7, 9, 13. The prison did not receive notice of the conviction and sentence until January 26, 2005. Defendants' Exhibit A at 17, 13. Therefore, it was not

---

[7] "Administrative segregation may be accomplished by confinement in a designated segregation unit or, in an emergency, to any single cell unit capable of providing secure segregation." Cal. Code Regs. tit. 15, § 3335(a).

8

until February 1, 2005, that a prison disciplinary hearing on the possession charges was held. Plaintiff was found guilty of possession of an inmate-manufactured weapon, and was counseled, reprimanded and made to forfeit 380 days' time credit. Defendants' Exhibit A-7.

On February 17, 2005, plaintiff filed a grievance designated Sac. C- Log. No. 05-0343, complaining that his placement into administrative segregation on December 4, 2002, violated his rights. He alleged that he was not given a copy of the final disposition of the disciplinary proceedings of January 16, 2003, which he claimed, deprived him of his right to file an appeal. He also claimed that prison officials did not honor his March 2, 2004, revocation of his request to postpone the prison disciplinary hearing on the weapon possession charge. Defendants' Exhibit A at 14-15. The informal and the first formal levels of review were bypassed. Defendants' Exhibit A at 14. On March 30, 2005, the reviewer on the second formal level of review considered the matter in detail and denied the appeal. Defendants' Exhibit A at 16-17. Plaintiff did not appeal the denial to the Director's Level of Review. Declaration of Grannis, at 2.

Plaintiff submits evidence of a different administrative appeal - a group appeal filed February 29, 2004, and designated Sac. C-04-0437. Plaintiff's Exhibit A; *see* Cal. Code Regs. tit. 15, § 3084.2(f) (authorizing group appeals). The prisoners alleged that from 1998 through 2004, Warden Pliler, Assistant Warden Rosario and Captain M. Lea subjected them to "unconstitutional conditions" and discriminated against "one particular class of inmates" by applying "institutional security procedures" against them and restricting their rights without any "reasonable, legitimate penological interest" for doing so. First and third Unnumbered Page of Plaintiff's Exhibit A. The first informal level of review was bypassed. The first formal level reviewer understood the appeal to complain about a "modified program"[8] imposed on Northern

---

[8] Neither party defines this term and the court has not found it in the governing regulatory code. However, Subchapter 3 of Title 15 of the California Code of Regulations addresses a range of activities and programs available to prisoners, including religious, educational, academic, recreational and physical fitness programs. The court understands

9

Hispanics. The reviewer explained that the restrictions were designed to control the movement of prisoners so as to maintain the safety of prisoners and staff, and denied the appeal. Fourth Unnumbered Page of Plaintiff's Exhibit A. The prisoners appealed, asserting that there was no safety or security reason for the restriction. Second Unnumbered Page of Plaintiff's Exhibit A. The reviewer on the second formal level determined that when Hispanic prisoners housed in certain cell blocks in C-Facility were permitted normal programming, the number of incidents resulting in injuries increased to an unacceptably high level, placing all staff and prisoners in Facility C at risk of injury. Fifth and Sixth Unnumbered Page of Plaintiff's Exhibit A. For these reasons, the appeal was denied.

Still dissatisfied, the prisoners appealed to the Director's Level of Review. Second Unnumbered Page of Plaintiff's Exhibit A. The reviewer on that level made detailed findings, explaining that a series of riots and incidents from November 12, 1998, through September 12, 2004, resulted in modified programming and lockdowns at times only for Northern Hispanics and at other times for the entire facility. Seventh and Eighth Unnumbered Pages of Plaintiff's Exhibit A. The reviewer at this level denied the appeal and notified the prisoners that they had exhausted the administrative remedies available to them. Eighth Unnumbered Page of Plaintiff's Exhibit A.

**V. Analysis**

Defendants assert that the appeal they submitted i.e., Sac. C-Log. No. 05-0343, does not relate to the allegations in the complaint, and even if it does, plaintiff did not pursue it to the Director's Level of Review. This, they assert, demonstrates that plaintiff failed to exhaust available administrative remedies. Having considered that appeal in detail, the court agrees that it does not exhaust the claims raised in this action. It relates to plaintiff's placement in

---

"modified program" to mean that prison officials limit prisoners' participation in these programs (and perhaps others of which the court is unaware) when participation could compromise prison security.

administrative segregation from December 4, 2002, until sometime in 2005, based on suspicion that he had been in possession of an inmate-made weapon, and addresses the process he received, or did not receive, with respect to disciplinary charges and a hearing thereon. In short, it is irrelevant. It does not allude to restricted access to prison jobs, recreational equipment or other programs. Furthermore, the time frame it addresses overlaps the time alleged in the complaint by only about three years. It is a stretch, at best, to conclude that this appeal pertains to the allegations in the complaint.

By contrast, the appeal that plaintiff submits, i.e., Sac. C 04-0437, addresses alleged constitutional violations occurring from 1998 through 2004, a time more consistent with the allegations of the complaint. The responses of the reviewers flesh out the circumstances of which plaintiff was complaining, i.e., repeated placement of the Northern Hispanics on "modified program" and lockdown.[9] The appeal's reference to "unconstitutional conditions," arbitrary deprivation of rights and privileges, and discrimination against a class of prisoners obviously notified prison officials that the problem alleged was race-based restriction of access to various programs ordinarily available to prisoners, *see e.g.*, Subchapter 3 of Title 15 of the California Code of Regulations. They responded by explaining why Northern Hispanics' movement and access to programs was restricted. Plaintiff submits a list of signatures, including his own, which he alleges was part of the group appeal. Ninth Unnumbered Page of Plaintiff's Exhibit A; *see* Cal. Code Regs. tit. 15, § 3084.2(f)(1) (requiring a list of the participating inmates' names, signatures, identification numbers and housing). As part of the group, plaintiff pursued the administrative appeals process to the Director's Level of Review. Defendants do not contest the fact of the appeal, the plaintiff's participation in it, or its relation to the allegations of

---

[9] A lockdown "means that a portion of the facility is affected by a suspension of required programs or services, and inmates are not released except as determined by the facility administration on an individuals, case-by-case basis. As determined by the facility administration, under such circumstances only critical inmate workers are permitted in the affected housing units/sub-facilities, e.g., yard, canteen draws, religious services, and visiting." Cal. Code Regs. tit 15, § 3000.

11

the amended complaint. In short, they do not contest that this appeal exhausted the available administrative remedies with respect to the claims in the complaint. Therefore, court finds that the appeal designated Sac. C-04-0437 addresses the allegations of the complaint and exhausts them for purposes of 42 U.S.C. § 1997e(a).

Accordingly, it is hereby RECOMMENDED that defendants' July 19, 2006, motion to dismiss be denied and that defendants be given 30 days to file and serve an answer to the amended complaint.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: January 24, 2007.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

\

12